## GARCIA v. GARCIA.

Civ. Code, § 38, makes a marriage between cousins of the half as well as of the whole blood incestuous and void from the beginning. Pen. Code, § 350, provides that persons who, being within the degree of consanguinity within which marriages are declared void,

intermarry, shall be punished as therein prescribed. Civ. Code, § 61, authorizes the annulment of a marriage on grounds therein specified which do not include the avoiding of a marriage valid where contracted, but contrary to the laws of South Dakota. Held, that a marriage between first cousins valid in the state where contracted and where the parties were then domiciled cannot be annulled by the courts of South Dakota, notwithstanding such marriage would have been void if contracted in South Dakota, as forbidden by its laws.

(Opinion filed, June 18, 1910.)

Appeal from Circuit Court, Lincoln County. Hon JOSEPH W. JONES, Judge.

Action by Eloise Cardozo Garcia against Emanuel R. Garcia. From an order sustaining a demurrer to the complaint, plaintiff appeals. Affirmed.

*Joseph Mitchell Donovan,* for appellant.

A void and prohibitive marriage has never been permitted to stand within the confines of the state prohibiting it, or making it a crime, because the domicile of the parties, or the marriage contract, was within a state or country permitting such unions. Bishop on Marriage, Divorce and Separation, Vol.1, §§ 831, 832, 836. No government will allow, within its domains, the existence of any state of society foreign to the condition and order of things laid down for its own citizens. Campbell v. Crampton, 2 Fed. 417; Maynard v. Hill, 125 U. S. 190; Hunt v. Hunt, 197 U. S. 565; Adams v. Palmer, 51 Me. 481; Wade v. Kalbfleisch, 58 N. Y. 282; Ditson v. Ditson, 4 R. I. 87; Maguire v. Maguire, 7 Dana. (Ky.) 181; Norman v. Norman, 121 Ca., 620; State v. Tutty, 41 Fed. 753.

*Herbert Abbott,* for respondent.

A marriage valid where entered into is valid every where even though the parties were within a prohibited degree of relationship. Sutton v. Warren, 10 Met. 451; Stevens v. Gray, 17 B. Mon. (Ky.) 193; Dannelli v. Dannelli, 4 Bush. 51; Campbell v. Crampton, 2 Fed. Rep. 417; Lanham v. Lanham, 117 N. W. 786; Martin v. Martin, 54 W. Va. 301; Adkins v. Holmes, 2 Ind. 197; Stevens v. Gray, 17 B. Mon. (Ky.) 215; Harrison v. State, 22 Md. 468; Sutton v. Warren, 10 Met. 451; Boylan v. Deinzer, 45 N. J. Eq. 485; Parker Appeal, 44 Pa. St. 309; Walters Appeal, 70 Pa. St. 392; Bowers v. Bowers, 10 Rich. Eq. (S. C.) 551.

CORSON, J. This is an appeal by the plaintiff from an order sustaining the demurrer to her complaint, and from a judgment entered thereon. The complaint is as follows: "That the plaintiff now is, and for a period of more than a year next and immediately preceding the commencement of this action has been, an actual and bona fide resident, in good faith, of the county of Lincoln and state of South Dakota, having during all of said time, and now, her sole, indefinite domicile herein, and that the plaintiff is a citizen of the state of South Dakota. That the plaintiff, whose name prior thereto was Eloise Cardozo, entered into a form of marriage with the defendant at Los Angeles, in the state of California, on the 3d day of April, 1901. That there are no children, issue of the marriage form between the plaintiff and the defendant. That at the date of said marriage form and now the plaintiff and the defendant were cousins of the whole blood, this plaintiff's father and the defendant's mother being brother and sister of the whole blood. That said marriage was and is incestuous and void under section 38, Civil Code of the state of South Dakota (Revised Code of South Dakota, 1903), and prohibited, criminal, and cohabitation thereunder criminal and prohibited, under section 350, Penal Code of the state of South Dakota. (Rev. Code S. D. 1903, § 350). Wherefore, the plaintiff demands judgment herein, and prays: (a) That said form of marriage and said relationship be declared by decree of this court null and void and the same annulled and held for naught, and the parties released from all obligations, if any, arising therefrom or thereunder and restored to the status of single persons. (b) For such other or further relief herein as may seem equitable and just." To this complaint the defendant interposed the following demurrer: "Now comes the defendant and demurs to the complaint of the plaintiff herein, and for grounds of demurrer says, first, that the court has no jurisdiction of the person of the defendant, or the subject of the action herein; second, that the complaint does not state facts sufficient to constitute a cause of action." The demurrer was sustained by the trial court, and five days given the plaintiff in which to amend her complaint. Plain-

tiff failing to amend the complaint, judgment was thereupon entered in favor of the defendant, in which "it is orderd and adjudged that the complaint of the plaintiff herein be, and the same is hereby, dismissed for want of jurisdiction of the parties and of the subject of the action, and for the further reason that the said complaint does not state facts sufficient to constitute a cause of action."

The assignments of errors are as follows: "(1) The court erred in not overruling the defendant's demurrer to the plaintiff's complaint. (2) That the court erred in sustaining the defendant's demurrer to the plaintiff's complaint. (3) That the court erred in rendering the judgment pronounced herein on the 3d day of March, 1910, dismissing the plaintiff's complaint for want of jurisdiction, and because said complaint does not state facts sufficient to constitute a cause of action."

The defendant was served with process in the state of New York, and appeared in the action generally by his attorney. It will be observed that the complaint alleges that the plaintiff has been a resident of Lincoln county in this state for a period of more than one year next preceding the commencement of this action; that she entered into a form of marriage with the defendant at Los Angeles, in the state of California, in 1901; that the plaintiff and the defendant were cousins of the whole blood, and that said marriage is incestuous and void under section 38, Civil Code of the state of South Dakota, and prohibited, criminal, and cohabitation thereunder criminal under section 350, Pen. Code of the state of South Dakota. Section 38 of the Civil Code provides: "Marriages between * * * cousins of the half, as well as of the whole blood, are incestuous and void from the beginning, whether the relationship is legitimate or illegitimate." Section 350, Pen. Code, provides: "Persons who, being within the degree of consanguinity within which marriages are, by the laws of the state declared incestuous and void, intermarry with each other, or commit adultery or fornication with each other, are punishable by imprisonment in the state prison not exceeding ten years." It will be observed by the complaint that it is not alleged therein that the contract of

marriage was legal at the time it was solemnized in the state of California by the laws of that state, and that the law of California relating to the subject of marriage is not set out in the complaint. But it is conceded by counsel for the respective parties that the marriage was valid at the time it was solemnized in the state of California under the laws of that state, and no question in the briefs of counsel is raised as to that point. We will therefore, assume for the purposes of the decision in this case that the marriage between the parties was at the time of its solemnization valid and legal in the state of California.

It is contended by the appellant: "(1) The rule that a marriage 'valid where entered into is valid everywhere' has never been applied to uphold a void or prohibited marriage. (2) A void and prohibited marriage has never been permitted to stand within the confines of the state prohibiting it, or making it a crime, because the domicile of the parties, or the marriage contract, was within a state or country permitting such unions. (3) Parties entering into a marriage contract that is prohibited in many states and countries do so with the knowledge that such union is legal only within the state or countries permitting such acts, and that, if they or one of them afterwards removes within a state or country prohibiting them, or making the cohabitation thereunder a crime, the contract and relationship is terminated by operation of law. * * * (7) Where an act or contract is prohibited by direct statute, the fact that such contract was entered into or commenced in a state permitting such act or contract could not give such act or contract any legal force or life in the prohibiting state, without setting at naught our own laws and public policy through a misconstruction of interstate comity."

It is contended, however, by the respondent: (1) That a marriage entered into between first cousins, both citizens and residents of the state of California, valid under the laws of the state, is valid within the state of South Dakota. (2) That section 38 of the Civil Code of this state prohibiting the intermarriage of cousins, and declaring the same to be void and incestuous, applies only to marriages entered into within this state or to its citizens

when entered into in another state to avoid the laws of their domicile. (3) That a complaint which fails to state that the plaintiff and defendant are both within the state, that the laws of the state of South Dakota are being violated, or that the marriage was void where entered into and consummated, fails to state sufficient facts to constitute a cause of action. It is further contended by the respondent that, it being conceded by the plaintiff and appellant that the marriage under consideration was valid at the time it was entered into by the law of the state of California, therefore no facts are stated which would entitle the plaintiff to maintain this action for the reason that the law of this state has not provided for annulling the contract of marriage upon any such ground. Section 61 of the Civil Code provides that marriage may be annulled by an action in the circuit court to obtain a decree of nullity for any of the causes existing at the time of the marriage. Six grounds or causes are provided for, but the ground stated in the complaint in this action is not referred to in that section. The question therefore presented for our consideration is, assuming that the marriage between the parties was valid and legal in the state of California, but would have been invalid, illegal, and void had it been contracted in this state, did the court err in holding that the complaint failed to state facts sufficient to authorize the court in this state to annul the marriage? We are of the opinion that the court committed no error in sustaining the demurrer, as the court was clearly without jurisdiction to annul the marriage so conceded to be legal and valid in the state of California where it took place.

Mr. Bishop, in his work on Marriage, Divorce and Separation (section 843, vol. 1), says: "By the international law of marriage, which ought to govern the courts in the absence of any statute of their own forbidding, a marriage valid by the law of the country in which it is celebrated, though the parties are but transient persons, though it would be invalid entered into under the same formalities in the place of their domicile, and even though contracted in express evasion of their own law, is good everywhere. And this doctring is specifically established in the tribunals of the common-law countries." That learned author further says:

"Sec. 857. Should there be, as occasionally it may happen, a country or state permitting marriages which by the common voice of civilized nations are vicious past toleration, such marriages, though solemnized under the protection of its laws, would not be within the protection of the law of nations because lacking the general favor essential. Therefore they would be rejected by the tribunals of every other country in which they were not by its local laws approved.

"Sec. 858. To bring a case within this exception, something more must appear than that the marriage is contrary to the general law of the state in which the question arises. It must be contrary also to the common voice of Christendom. The familiar illustrations, perhaps the only ones of which a writer can speak with absolute assurance, are polygamous marriages and those of excessively near consanguinity."

The learned author then proceeds to state the law as adopted by the Supreme Court of the state of Kentucky, as follows: "Sec. 846. Where a Kentucky statute prohibited intermarriages within a degree of consanguinity too remote to conflict with the law of nations, and a pair of Kentucky people, whom it rendered incompetent, went into Tennessee and there intermarried, no like provision forbidding in Tennessee, the Kentucky court held it to be good in Kentucky; observing, by Marshall, C. J.: 'As the prohibitory law of Kentucky would have had no force in Tennesseee, the marriage in the latter state must there have created the lawful relation or status of marriage, by which the parties were in law and in fact lawful husband and lawful wife to each other in the state of Tennessee, so soon as the marriage was performed, and continued to be, so long as they remained, and would have been so if at any time before an actual divorce they had returned to that state. And so if immediately after the marriage they had gone through the other states, and even to Europe, intending all the time to return to Kentucy, they would have been lawful husband and wife in every place, at least in every country where the common law prevails, because it is a part of that law that, being lawful husband and wife at the place of marriage, they continue to

be so wherever they may be.' Therefore, since matrimony was a part of the law of nations, this individual marriage could not be otherwise than good in Kentucky. A contrary decision rendering it void in Kentucky while valid in all the rest of the world would have taken Kentucky marriages out of the law of nations, and made them a mere domestic institution, peculiar to the one state." And the author states: "A like doctrine was shortly afterwards maintained in England."

The case of Medway v. Needham, 16 Mass. 157, 8 Am. Dec. 141, is also a case directly in point. In that case the learned Supreme Court, speaking by Mr. Justice Parker, says: "By the law in force here when the marriage in question took place that marriage could have had no legal effect, if it had been celebrated within this then province, because expressly prohibited by law. * * * But the marriage was solemnized in Rhode Island, where it was not unlawful. Now, it is a principle adopted for general convenience and security that a marriage which is good according to the laws of the country where it is entered into shall be valid in any other country. And this principle is considered so essential that, even when it appears that the parties went into another state to evade the laws of their own country, the marriage in the foreign state shall nevertheless be valid in the country where the parties live. * * * The law now in force in this state not only prohibits the marriage of negroes and mulattoes with white persons, but expressly declares such marriages to be void. But they are only void if contracted within this state in violation of its laws. If the marriage takes place in a state whose laws allow it, the marriage is certainly good there; and it would produce greater inconveniences than those attempted to be guarded against if a contract of this solemn nature, valid in a neighboring state, could be dissolved at the will of either of the parties by stepping over the line of a state which might prohibit such marriages." Van Voorhis et al. v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505; Thorp v. Thorp, 90 N. Y. 602, 43 Am. Rep. 189; Stevenson v. Gray, 17 B. Mon. (Ky.) 193; Campbell v. Crampton (C. C.) 2 Fed. 417; Dannelli v. Dannelli, 4 Bush 51.

The law as stated by Mr. Bishop and in the decisions from which we have quoted clearly establish the law applicable to this case. The marriage therefore being valid in the state where it was contracted, is to be regarded as valid in this state, and fully supports the decision of the court in sustaining the demurrer to the complaint in this action. As was well said by the Supreme Court of Massachusetts in the case of Sutton v. Warren, 10 Metc. 451: "It is a well-settled principle in our law that marriages celebrated in other states or countries if valid by the law of the country where they are celebrated are of binding obligation within this commonwealth, although the same might by force of our laws be held invalid if contracted here. This principle has been adopted as best calculated to protect the highest welfare of the community in the preservation of the purity and happiness of the most important domestic relation in life."

The contention of the appellant that the courts of this state have jurisdiction to declare a marriage contracted in the state of California where the same was valid and legal, illegal, and void cannot, in our opinion, be sustained. The law of this state upon the subject of marriage cannot properly be held to apply to marriages contracted in other states, legal and valid where contracted, and where, as in this state, there is no provision in our Code authorizing our courts to declare such marriage legally contracted in another state void in this state. The consequences of declaring a marriage void ab initio and annulling the same are very serious. Its effect is to bastardize innocent children, deprive them of their inheritance, and to make the parties whose marriage was legal and valid in the state where contracted criminally liable in this state, and subject to exceedingly severe penalties. The law of the state of California, permitting first cousins to legally intermarry certainly does not come within the exceptions laid down by Mr. Bishop or referred to by the courts. Incestuous marriages as spoken of by Bishop and referred to by the authorities as being an exception to the rule embrace only such marriages as are incestuous according to the generally accepted opinion of Christendom, which relates only to persons in direct line of consanguinity,

and brothers and sisters, and does not embrace cousins. Jackson v. Jackson, 82 Md. 17, 33 Atl. 317, 34 L. R. A. 773. While it is competent for the lawmaking power of this state to declare a marriage between cousins as incestuous and void, such a law does not come within the exception referred to by Bishop, and by the authorities generally. Undoubtedly it was competent for the lawmaking power of this state to provide that marriages in other states, or countries between cousins, and therefore incestuous and void under our Code, might be declared void by the courts of this state, but in the absence of any such provisions, the courts of this state are clearly without authority under the general principles applicable to the law of marriages to annul a marriage legal and valid in a state where the same was contracted, and where the parties were domiciled. The learned counsel for the appellant has cited numerous authorities, some of which, upon first reading, would seem to support the contention of the appellant, but upon a careful examination will be found to be clearly distinguishable from the case at bar. Most of the cases cited by counsel for appellant appear to be cases where parties domiciled in the state have for the purpose of avoiding the laws of their own state inhibiting the marriage gone to another state or country, and there contracted the marriage, and subsequently returned to their own state. In such cases it seems to be held that marriages so contracted will be held invalid in the state where the parties are domiciled, though the decisions are conflicting upon that subject. The law, however, as laid down in the Massachusetts, Kentucky, and New York cases, seems to be fully approved by the Supreme Court of North Carolina in State v. Ross, 76 N. C. 242, in which the court held that a marriage between a negro man and a white woman in a state where they were bona fide domiciled, and according to the law of which the marriage was valid, would be recognized as valid in North Carolina notwithstanding that it would have been invalid if it had been solemnized in the latter state. We shall not attempt a review of the decisions cited by counsel for the appellant, as such a review would extend this opinion to an unreasonable length, and will conclude by calling attention to an exhaustive note

to Hills v. State in 57 L. R. A. 155 (61 Neb. 589, 85 N. W. 836), in which the authorities bearing upon the question involved in this case are very fully and ably reviewed. In our opinion the rule as laid down by Bishop and supported by the Supreme Courts of Kentucy, Massachusets, New York, and North Carolina clearly establishes the law that should be applied to cases arising under the provisions of our Code.

Finding no error in the record, the order and judgment of the circuit court are affirmed.

WHITING, P. J. While I fully concur in my colleague's conclusions that the judgment and order appealed from should be affirmed, it seems to me best to express no opinion as to the criminal liability of parties, who, though related within the degrees that would make their marriage if contracted in this state incestuous, yet, having entered into a valid marriage in another state, come into this state and while within this state indulge in sexual intercourse. A determination of such question is in no manner called for upon this appeal.

SMITH, J. I concur in the opinion of Judge WHITING.

McCOY, J. I concur in the views expressed by Justice WHITING.