IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 117,839

BUILDING ERECTION SERVICES COMPANY, INC.,
*Appellant.*

v.

WALTON CONSTRUCTION COMPANY, INC., and
AMERICAN HOME ASSURANCE COMPANY,
*Appellees,*

WALTON CONSTRUCTION COMPANY, INC.,
*Appellee,*

v.

BUILDING ERECTION SERVICES COMPANY, INC.,
*Appellant.*

SYLLABUS BY THE COURT

1.

While different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court.

2.

A party who fails to petition the Kansas Supreme Court for review of a Court of Appeals decision is bound by the holding of that decision.

1

3.

Upon the facts of this case—where liability has been established, the record clearly shows the injured party has sustained damages, and the only remaining question is the proper apportionment of damages to be awarded—it was error for the Court of Appeals to decline to remand the matter to the district court.

Review of the judgment of the Court of Appeals in an unpublished opinion filed July 20, 2018. Appeal from Johnson District Court; KEVIN P. MORIARTY, judge. Opinion filed November 20, 2020. Judgment of the Court of Appeals reversing the judgment of the district court is affirmed in part, reversed in part, and vacated in part. Judgment of the district court is reversed, and the case is remanded with directions.

*R. Scott Beeler*, of Lathrop Gage LLP, of Overland Park, argued the cause, and *Carrie E. Josserand*, of the same firm, and *Kurt S. Brack*, of Brown & Ruprecht, of Kansas City, Missouri, were with him on the briefs for appellant.

*Danne W. Webb*, of Horn Aylward & Bandy, LLC, of Kansas City, Missouri, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

WALL, J.: This decision resolves the third appeal in this Odyssean litigation between Walton Construction Company (Walton) and Building Erection Services Company (BESCO) over liability and damages resulting from faulty construction on the University of Kansas' Memorial Stadium. This appeal arises from the district court judge's third attempt at entering a damages award in favor of Walton. Below, the Court of Appeals reversed the damages and attorney fee award for failure to abide by the law of the case and the mandate rule and lack of substantial competent evidence. The Court of Appeals also declined to remand for determination of a new award amount.

We affirm the Court of Appeals' finding that the district court judge violated the mandate rule with the third damages award. Because we reverse the damages award on this ground, we need not reach the second question of whether the most recent award is supported by substantial competent evidence. Finally, we hold that the Court of Appeals erred by declining to remand this case to the district court for a new award. Accordingly, we remand this case to the district court for a damages and attorney fee award that complies with the binding mandates from the first two appeals in this case.

FACTS AND PROCEDURAL BACKGROUND

More than a decade into litigation, we assume that the parties are well-acquainted with the facts and procedural history of this case. The issue of liability has been decided and consistently affirmed in favor of Walton, leaving only the question of damages and attorney fees at issue. As such, we recite only those facts necessary to explain our holding.

In 1999, the University of Kansas (KU) built a new press box for its football stadium. Walton was the project's general contractor. Walton hired BESCO to install structural steel and the press box's glass curtain wall. The parties' relationship was memorialized in a subcontractor agreement, through which BESCO agreed to indemnify Walton against claims and losses related to BESCO's work.

Shortly after the press box was completed, KU discovered that the new construction leaked badly. Because of the leaks, KU withheld a more than $400,000 payment from Walton. Walton, in turn, did not pay BESCO the remaining $26,548.54 it was owed. During the ongoing dispute between KU and Walton, KU brought in an external engineering contractor to identify the source of the leaking near the press box's windows and propose solutions. This contractor produced the "Slemmons report." The report did not delve into subcontractor liability for the leaks but merely allocated

3

responsibility between KU and Walton. The report found KU 10% responsible for the leaks, the architects 10% responsible, and Walton 80% responsible.

In 2002, BESCO sued Walton and KU to recover the $26,548.54 payment that was being withheld, thus beginning this trail of litigation.

After a series of studies and attempted fixes, KU decided to take apart a section of the press box in 2004 to determine and remedy the source of the leaks. During this examination, KU discovered that BESCO had used inadequate screws to attach the glass curtain wall to the press box's steel structure. This posed a large safety risk. KU opted to fix both the leaks and the fastener issue at the same time. To do so, they removed and replaced all the glass and the metal walls. BESCO was again subcontracted on the press box project, this time to remediate the glass.

In 2005, Walton and KU settled their dispute over liability for the leaks and fastener issue. Walton acknowledged it had breached its contract. Walton paid KU over $600,000, and KU assigned its claims against BESCO to Walton. BESCO was not a party to this agreement. Walton then sued BESCO for indemnification for its damages and KU's damages, as well as both Walton's and KU's attorney fees. A district court judge consolidated this case with BESCO's earlier suit.

After a bench trial, the district judge found that BESCO breached its contract with Walton when it failed to follow the correct shop drawings and used inadequate screws for fastening. The district judge ordered BESCO to pay Walton over a million dollars, including the entire cost of the press box repairs and Walton's attorney fees. BESCO appealed. In *Building Erection Services Co. v. Walton Construction Co.*, No. 100,906, 2009 WL 4639486 (Kan. App. 2009) (unpublished opinion) (*BESCO I*), a Court of Appeals panel affirmed BESCO's liability to Walton for breach of contract but reversed and remanded the damages award for lack of substantial competent evidence.

4

On remand, the district judge entered a new award of almost $900,000, accounting for all of Walton's and KU's attorney fees and half the cost of removing and replacing the press box's glass and metal panels. BESCO again appealed. In *Building Erection Services Co. v. Walton Construction Co.*, No. 111,706, 2015 WL 4879075 (Kan. App. 2015) (unpublished opinion) (*BESCO II*), a different Court of Appeals panel again reversed the amount of damages for lack of substantial competent evidence. Neither party petitioned for review of that decision.

On remand for the second time, the district judge entered his third award. This time, he ordered BESCO to pay 85% of the cost of removing and replacing the metal panels, and 50% of the cost of removing and replacing the glass. Also, the district judge again ordered BESCO to pay the attorney fees that the Court of Appeals reversed in *BESCO II*, as well as further fees Walton accrued during the continuing litigation. BESCO appealed again. In *Building Erection Services Co. v. Walton Construction Co.*, No. 117,839, 2018 WL 3485670 (Kan. App. 2018) (unpublished opinion) (*BESCO III*), yet another panel of the Court of Appeals again reversed the damages award and attorney fee award for failure to abide by the law of the case and the mandate rule and lack of substantial competent evidence. This time, the panel declined to remand for determination of a new award amount. This court granted Walton's petition for review of *BESCO III*.

## DISCUSSION

*The District Court's Third Award Was Prohibited by the Mandate Rule.*

The parties first dispute whether the district judge's third award complied with the mandates in *BESCO I* and *II*. To answer this question, we must first ascertain what those mandates were. "Whether a district court complied with a Court of Appeals mandate, and

5

the proper interpretation of a mandate, are questions of law over which we exercise de novo review." *Einsel v. Einsel,* 304 Kan. 567, 584, 374 P.3d 612 (2016).

*The* BESCO I *Mandate*

In *BESCO I*, BESCO appealed the district judge's damage award ordering it to pay the entire cost of the press box remediation. First, the panel held that Walton was entitled to indemnification under the parties' contract. *BESCO I*, 2009 WL 4639486, at *5. The panel correctly identified the controlling provisions in the contract's indemnification clause:

> "'To the fullest extent permitted by law, [BESCO] shall indemnify and hold harmless [Walton] from and against claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of [BESCO's] Work under this Subcontract, . . . but only to the extent caused in whole or in part by *negligent acts or omissions* of [BESCO], regardless of whether or not such claim, damage, loss or expense is caused in part by a party indemnified hereunder.' (Emphasis added.)" 2009 WL 4639486, at *5.

The *BESCO I* panel held that "[t]he district court's award of all of the damages against BESCO is not supported by either the indemnification language in the contract between BESCO and Walton, or the record on appeal." 2009 WL 4639486, at *7. It noted that "there is no evidence in the record on appeal that ties Walton's requested damages, *or the total cost of remediation*, to BESCO's failure to follow the correct shop drawings." (Emphasis added). 2009 WL 4639486 at *6. The panel held that "the district court erred in assessing all of the damages against BESCO." 2009 WL 4639486, at *7. It therefore "reverse[d] and remand[ed] this issue to the district court for a determination of those damages that arose out of, or resulted from, BESCO's negligent acts or omissions." 2009 WL 4639486, at *7.

6

In other words, Walton had failed to show causation between BESCO's faulty workmanship and all the costs of remediation. The district court did not find that BESCO's work caused the leaks, so it reasoned that BESCO should not have to pay all the costs of remediation, since some of those remediation costs were due to the leaks, not the fastener issues.

Thus, the mandate of *BESCO I* was to apportion the damages according to BESCO's actual fault, i.e., those "arising out of or resulting from performance" of BESCO's faulty work under the contract. See 2009 WL 4639486, at *5. Walton petitioned for this court's review of *BESCO I*, which we declined. The *BESCO I* mandate therefore became binding on the district court.

### *The* BESCO II *Mandate*

On remand for the first time, after additional discovery and an evidentiary hearing, the district judge, in his second award, reduced Walton's recovery from the full cost of the press box remediation to half the cost of the glass and metal removal and reinstallation, plus a proportionate amount of the overhead from the repairs. He also awarded Walton its attorney fees as well as KU's attorney fees and costs.

BESCO again appealed. It argued that the damages award was not supported by substantial competent evidence. In *BESCO II*, a different Court of Appeals panel wrote that "the determinative issue on remand was whether Walton proved by substantial competent evidence that the claims arising from the scope of BESCO's contracted work under BESCO's subcontract caused in whole or in part the water infiltration problem. We think not." *BESCO II*, 2015 WL 4879075, at *17. The panel held that "the trial court's apportionment between Walton and BESCO is inconsistent with the assignment of fault contained in the Slemmons report and with BESCO's scope of work under its subcontract." 2015 WL 4879075, at *18. The panel characterized the 50/50 split of costs

7

for the glass and metal panel removal and replacement as "an unreliable approximation of BESCO's responsibility." 2015 WL 4879075, at *19.

Finally, the *BESCO II* panel also reversed and remanded the attorney fee award, reasoning that there was no nexus between the award and BESCO's scope of work, as *BESCO I* required:

"Walton offers no explanation for how BESCO is liable for it or KU's assigned attorney fees and costs incurred before anyone even realized that there was a problem with BESCO's work. Such a conclusion would violate the law of the case established in *BESCO I.*" 2015 WL 4879075, at *21.

As to the damages issue, the *BESCO II* panel observed that the district court was required, by the contract and the mandate of *BESCO I*, to allocate the costs of the press box remediation "according to Walton's and BESCO's respective scope of work." 2015 WL 4879075, at *18. However, *BESCO I* cannot be construed as a mandate that Walton had to prove BESCO's defective work caused the leaks in order to recover the costs of remediating the fastener issue. Rather, *BESCO I*'s mandate was to adjust the damages award to correspond only with those costs of remediation attributable to BESCO. Indeed, the parties' contract provides that BESCO shall indemnify Walton for "claims, damages, losses and expenses, including but not limited to attorney's fees, arising out of or resulting from performance of [BESCO's] Work . . . but only to the extent caused in whole or in part by negligent acts or omissions of [BESCO]."

For this reason, we are sympathetic to Walton's argument that substantial competent evidence supported the district court's finding, in its second award, that BESCO was responsible for 50% of the costs of removing and replacing the glass and metal panels. The record includes evidence suggesting the glass and metal panels had to be removed to properly remediate BESCO's defective fastener work. Likewise, the record

8

included evidence that remediation of the water infiltration also required removal of the glass and metal panels. Because both remediation issues (water and fastener) were rectified at the same time and both required removal of the glass and metal panels, a 50/50 split of these remediation costs may have been a reasonable computation of BESCO's responsibility. See *Cerretti v. Flint Hills Rural Elec. Co-op. Ass'n*, 251 Kan. 347, 362, 837 P.2d 330 (1992) ("A reasonable basis for computation and the best evidence obtainable under the circumstances should enable the trier of fact to make an estimate which provides an adequate recovery of damages.").

Nevertheless, Walton did not petition for this court's review of *BESCO II*, foreclosing our ability to review this issue. See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 172, 298 P.3d 1120 (2013) ("A party aggrieved by a decision of the Court of Appeals on a particular issue must seek review in order to preserve the matter for Kansas Supreme Court review."); Supreme Court Rule 8.03(c)(3) (2020 Kan. S. Ct. R. 52).

As a result, under the *BESCO II* mandate, the district judge was again charged with the task on remand to determine what portion of the remediation costs and attorney fees were "attributable to the contracted work performed by BESCO that fell under the indemnity provision of BESCO's subcontract,"—this time with full knowledge that the mandates of *BESCO I* and *II* foreclosed any award of 50% or more of the costs of removing the glass and metal panels. *BESCO II*, 2015 WL 4879075, at *18.

On remand for the second time, the parties did not present additional evidence, and the district judge entered his third award on the existing record. In the third award, the district judge challenged the *BESCO I* and *II* mandates in light of his prior factual findings:

9

"There seems to be confusion regarding the nature and the importance of the Slemmons report as it relates to the fastener issue. In *BESCO II*, the Court of Appeals noted that the *BESCO I* panel held that 'The remediation work was initially started only because of the extensive water infiltration, in which both the Slemmons and ED reports did not attribute any fault to BESCO.' *BESCO II* at *10 (citing *BESCO I* at *6). This is unfortunate because while this may have been the *BESCO I* panel's understanding at the time, the facts found by this Court establish otherwise. . . .

"The *BESCO II* panel misunderstands the role of the Slemmons report. . . .

"The panel places too much emphasis on the Slemmons report. The determinative issue here is not whether Walton proved by substantial competent evidence that BESCO's subpar work caused water infiltration. Rather, the issue here is whether Walton satisfactorily proved that the renovations were caused in whole [or] in part by BESCO's failure to use the correct shop drawings to install the curtain wall system. This Court believes that the findings of fact from *BESCO I* and *BESCO II* incorporated into this decision show that the renovation was made necessary because of the anchoring issues caused by BESCO. The water infiltration was not the primary concern. The anchoring issue, and the hazard of certain casualty if the curtain wall system failed fueled the renovations. Even though the renovations fixed separate issue[s] that caused the water infiltration, it is clear that the main purpose of renovating was to anchor the curtain wall system properly."

The district judge also discussed the applicability of the law of the case doctrine. Erroneously, he concluded that the mandate rule did not prohibit him from entering an award of 50% or more of the glass and metal remediation costs because "[t]his case has been anything but final." Ultimately, the district judge entered a new award granting Walton a higher percentage (85%) of the metal costs, the same percentage of glass costs, and the same attorney fees overturned in *BESCO II*, plus new attorney fees accrued in the ongoing litigation.

*The District Court's Damage Award Is Prohibited by the Mandate Rule.*

In this appeal, BESCO argues that "[t]he binding law of the case and the mandates established in *BESCO I* do not permit an award to Walton for *any* of the remediation costs incurred for removing metal panels or glass removal."

Walton, on the other hand, encourages this court to adopt the district judge's reasoning that the law of the case doctrine and mandate rule did not foreclose his third award because the law of the case doctrine is discretionary, and the case was "anything but final." Walton also argues that the third award did comply with what it considers to be the Court of Appeals' mandates.

In *State v. Kleypas*, 305 Kan. 224, 296-97, 382 P.3d 373 (2016), we explained the binding effect of a mandate and its limiting impact on subsequent proceedings in district court:

> "Two statutes address the controlling nature of a mandate. K.S.A. 60-2106(c) provides, in relevant part, that the mandate of this court 'shall be controlling in the conduct of any further proceedings necessary in the district court.' And K.S.A. 20-108 states that a district court must execute any further proceedings 'according to the command of the appellate court made therein.' Under the plain language of these statutes, a district court is required to apply the mandate without exception. *Collier*, 263 Kan. at 637. The *Collier* court made this point emphatically, stating: 'It is axiomatic that on remand for further proceedings after a decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal.' 263 Kan. 629, Syl. ¶ 4.

> "Some jurisdictions, notably several federal circuit courts, hold that a trial court may depart from a mandate in order to obey new law without first asking permission from the appellate court. See 18B Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478.3 (2002). While this court has recognized its power to

11

recall, correct, amplify, or modify its own mandate, *e.g.*, *West v. Insurance Co.*, 105 Kan. 414, 415-16, 185 P. 12 (1919), Kansas cases have not recognized the power of a district court to unilaterally depart from the mandate, even when a change in the law has occurred. And neither K.S.A. 60-2106(c) nor K.S.A. 20-108 contemplate such an exception. See *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013) (appellate court cannot delete provisions or supply omissions in a statute). Hence, we conclude the district court was duty bound to comply with the mandate as written. K.S.A. 60-2106(c); *Collier*, 263 Kan. 629, Syl. ¶ 4."

So while different panels of the Court of Appeals hearing successive appeals in the same case may, in exceptional circumstances, depart from the law of the case, under Kansas law no exceptional circumstances permit a lower court to circumvent the mandate of a higher court, a result that logically follows from the hierarchical court system. See 18B Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 4478 (2002) ("Principles of authority, however, do inhere in the 'mandate rule' that binds a lower court on remand to the law of the case established on appeal. The very structure of a hierarchical court system demands as much.").

While the district judge's second award—the 50/50 damages split—likely complied with the spirit of *BESCO I*'s mandate to assess the damages according to the parties' contract, *BESCO II* held that a 50/50 split was not supported by substantial competent evidence. On the second remand, the district judge was bound by the mandate rule to this holding. Insofar as the district judge's third award again granted Walton 50% of the cost of the glass remediation, it violated the mandate rule.

The award of 85% of the metal panel remediation costs also violated the mandate rule because the prohibition of such an award is logically implied in *BESCO II*'s ruling: if 50% of the metal panel costs are not supported by substantial competent evidence, a larger percentage of the costs also lacks support by substantial competent evidence. See

*State v. Tafoya*, 304 Kan. 663, 670, 372 P.3d 1247 (2016) ("[T]he substance of the Court of Appeals ruling controls over the form its ruling takes.").

In *Gannon v. State*, 303 Kan. 682, Syl. ¶ 2, 368 P.3d 1024 (2016), we explained that the mandate rule compels the district court to implement both the letter and spirit of the appellate court's opinion:

> "It is axiomatic that on remand for further proceedings after a decision by an appellate court, the district court must proceed in accordance with the appellate court mandate. The district court must implement both the letter and spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces, and it has no authority to consider matters outside the mandate."

Here, the substance or the "spirit" of *BESCO II* foreclosed a damages award of 50% or more of the costs of the glass and metal panel remediation. And Walton did not petition for review of this decision. Despite this, in his third award, the district judge awarded Walton damages of 50% of the cost of the glass remediation and 85% of the cost of the metal panel remediation. The district court committed reversible error by failing to follow the appellate mandates. *Kleypas*, 305 Kan. at 297.

*The Attorney Fee Award Is also Prohibited by the Mandate Rule*

Likewise, the mandate rule requires reversal of the attorney fees component of the third award. Originally, the district judge awarded Walton $250,000 in attorney fees. The *BESCO I* panel did not specifically address the proper allocation of Walton's attorney fees under the contract. In his second award, the district judge awarded Walton over $500,000 in attorney fees, including all of KU's attorney fees and costs.

In *BESCO II*, the panel considered whether the award was supported by substantial competent evidence. *BESCO II*, 2015 WL 4879075, at *15. The panel

13

concluded that this portion of the award included fees unrelated to the scope of BESCO's work and remanded this issue to the district court to apportion the fees consistent with the scope of the indemnification provision:

> "KU's attorney-fee itemization spans more than 150 pages and includes a significant amount of work conducted from April 2003 up until the fastener problem was discovered in 2004. The same is true of Walton's attorney-fee itemization. Walton offers no explanation for how BESCO is liable for it or KU's assigned attorney fees and costs incurred before anyone even realized that there was a problem with BESCO's work. Such a conclusion would violate the law of the case established in *BESCO I*. Likewise, the trial court offers no explanation for why it only assessed half of the remediation damages to BESCO but ordered it to pay all of KU's and Walton's attorney fees and costs.
>
> "As a result, we reverse that portion of the trial court's judgment that orders BESCO to pay Walton's and KU's attorney fees and expenses. We remand with directions to determine what portion of those fees and expenses that were attributable to the contracted work performed by BESCO that fell under the indemnity provision of BESCO's subcontract." 2015 WL 4879075, at *21.

Walton did not petition for review of *BESCO II*. Thus, like the similar holding with respect to damages, this holding formed the mandate the district judge was bound to follow on remand. Nevertheless, in the third award, the district judge once again ordered BESCO to pay Walton over $500,000, including all of KU's attorney fees and costs, without determining what portion of these fees and expenses were attributable to the work BESCO performed under the contract. This violated the explicit mandate of *BESCO II* and was reversible error. *Kleypas*, 305 Kan. at 297.

*We Do Not Decide Whether the Most Recent Award Is Supported by Substantial Competent Evidence.*

Below, the Court of Appeals in this case also analyzed the third award to determine whether it was supported by substantial competent evidence. And the parties

14

preserved that issue for this court's review. Nevertheless, we decline to reach the issue of substantial competent evidence because any ruling on such an issue would constitute dicta, as it is unnecessary to the resolution of this case. See *In re Estate of Loughmiller*, 229 Kan. 584, 589, 629 P.2d 156 (1981) (components of a decision not necessary to the case's holding constitute dicta). Because awards of 50% of the glass costs and 85% of the metal costs are legally barred by the mandate rule, those awards must be reversed regardless of whether they are supported by substantial competent evidence. Accordingly, we decline to reach this issue and vacate the portion of the Court of Appeals' *BESCO III* decision holding that the third award was not supported by substantial competent evidence.

*We Remand for a New Award.*

In *BESCO III*, the Court of Appeals panel reversed the damages and attorney fee awards but declined to remand for new awards. 2018 WL 3485670, at *16-18. The panel cited this court's opinion from *LSF Franchise REO I, LLC v. Emporia Restaurants, Inc.*, 283 Kan. 13, 42, 152 P.3d 34 (2007), which found remand to be unnecessary in limited instances:

> "In some instances, this court will remand the case before it for a reconsideration of the evidence at the trial court level in light of its opinion. Remand is not necessary, however, where an appellate court announces no new legal principles, but instead reviews the record in light of the existing law and determines that the record cannot support the trial court's conclusions."

The *BESCO III* panel reasoned that "Walton has had three chances to present evidence that would support its damages award, and it has failed to do so. We see no reason to give Walton a fourth chance." 2018 WL 3485670, at *16.

15

*LSF Franchise* is distinguishable from this case. There, the plaintiff-debtor, as an entity challenging a garnishment order, had the burden to prove that it did not own the funds in the accounts being garnished. The district court ruled that the funds were not subject to garnishment because they did not belong to the debtor. On appeal, we held that none of the district judge's conclusions were supported by any evidence; the funds in the account belonged to the debtor. *LSF Franchise*, 283 Kan. at 41. We thus declined to remand because our holding that the accounts were in fact subject to garnishment required no further action from the district court. 283 Kan. at 42.

In stark contrast, here, BESCO's liability to Walton has been consistently affirmed and is now the law of the case. Moreover, the record includes evidence supporting an award of damages for Walton. As the *BESCO II* panel acknowledged, Walton did not fail to meet its burden to prove damages. *BESCO II*, 2015 WL 4879075, at *12. The issue is not whether Walton can recover at all, but rather arriving at a damages and attorney fee award that comports with BESCO's liability under the parties' contract and the mandates in *BESCO I* and *II*.

Moreover, while this matter has been before the district court on three occasions, Walton had only one opportunity to present evidence supporting an apportionment of damages consistent with the mandate in *BESCO I*. And, Walton did so. Further, we hesitate to hold Walton accountable for the district court's failure to comply with the mandates of the Court of Appeals.

Under these circumstances—where liability has been established, the record clearly shows Walton has sustained damages, and the only remaining question is the proper apportionment of damages to be awarded—we hold that it was error for the Court of Appeals to decline to remand the matter to the district court.

CONCLUSION

For the reasons explained above, we affirm the Court of Appeals' judgment insofar as it reversed the third award for failing to comply with the mandate rule. We vacate the portion of the Court of Appeals' opinion holding that the third award was not supported by substantial competent evidence. Finally, we reverse the Court of Appeals' decision to not remand the case, and we remand to the district court for entry of an award that complies with the mandates from *BESCO I* and *BESCO II*.

BEIER and BILES, JJ., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

GRANT D. BANNISTER, District Judge, assigned.[2]

---

[1]**REPORTER'S NOTE:** Senior Judge Ward was appointed to hear case No. 117,839 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2]**REPORTER'S NOTE:** District Judge Bannister was appointed to hear case No. 117,839 vice Justice Biles under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.