In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4058

Winifred E. Barron,

Plaintiff-Appellant,

v.

Kenneth S. Apfel, Commissioner of Social Security,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 98-4179--James L. Foreman, Judge.

Submitted March 22, 2000--Decided April 17, 2000

Before Posner, Chief Judge, and Diane P. Wood and
Evans, Circuit Judges.

Posner, Chief Judge.  Winifred Barron applied for
disabled widow's benefits as the widow of Paul
Raymond. 42 U.S.C. sec. 402(e). She was turned
down on the ground that she had not been
Raymond's common law wife, and appeals to us from
the district court's refusal to set aside the
denial of her application.

Barron, now age 64, has made a career of
marriage. We count seven, but the validity of
several, including the common law marriage with
Raymond, is critically in issue. She claims that
three days after she divorced her second husband,
she became Raymond's common law wife under the
law of Michigan. That was at the end of 1956
(when she was only 20!), shortly before Michigan
abolished common law marriage (but it did not
abolish it retroactively). They separated in
1971, but the marriage was never dissolved. The
day before the separation, Barron married her
fourth husband. She divorced number four and
later number five, and was married to six at the
time of Raymond's death in 1987. She divorced six
and married seven before applying for widow's
benefits in 1995.

There are a number of reasons to doubt whether
she was ever married to Raymond: they did not
hold themselves out to the world as being

married; common law marriage requires proof of cohabitation, and it does not appear that she was living with Raymond when they "married"; the judgment of divorce from her second husband (Raymond's immediate predecessor) was not entered until after she married Raymond; the licenses for her subsequent marriages do not mention a previous marriage to Raymond, while mentioning her other previous marriages.

There is more, which is the occasion for our writing an opinion in what is, after all, a frivolous appeal. The statute grants widow's (or divorced spouse's) benefits only to an individual who "is not married," 42 U.S.C. sec. 402(e)(1)(A), with three exceptions: (1) the individual remarried after reaching the age of 60; (2) she (or he, but we'll confine our attention to widows, since that is Barron's class) remarried in her fifties but is now at least 60 and at the time of her remarriage was entitled to disabled widow's benefits; or (3) she remarried in her fifties, is still in her fifties, and was disabled at the time of her remarriage. 42 U.S.C. sec. 402(e)(3); 20 C.F.R. sec. 404.335(e). Although now in her sixties and applying for disabled widow's benefits, Barron fits none of the exceptions. She married her current husband when she was 52, which rules out (1); she was not entitled to widow's disability benefits at the time of that marriage, which rules out (2); and she was not disabled at that time, which rules out (3). It might seem that (3) would also be ruled out by the fact that she is over 60, but we think it apparent that the statute and regulation refer to the applicant's age at the time of the application--the applicant does not forfeit her entitlement by passage of time during what may be protracted administrative and judicial proceedings to establish the entitlement. And Barron applied five years ago.

But was she really "married" when she applied for the benefits? That is a more complicated question than might appear and one on which there is no case law. One might think that since a common law marriage is contracted without the usual formalities, it can be dissolved without the usual formalities. But that is incorrect. Common law marriage is not a synonym for cohabitation, "domestic partnership," or contract. The purpose of common law marriage is not to create a second-class sort of marriage, but rather to repair unintended deficiencies in the ceremony, documentation, or other formalities of marriage, or in the legal capacity to wed (a party might erroneously believe that he or she had been validly divorced from a previous spouse). See, e.g., 1 Homer H. Clark, Jr., The Law of Domestic Relations in the United States

sec. 2.4, p. 111 (2d ed. 1987). That is why it is important that the parties hold themselves out as being married--if they don't think they're married, there is no formal defect to repair.

Common law marriage is thus to domestic relations law what the doctrine of adverse possession is to property law--a way of curing formal defects in a legal status. And just as a person who has acquired title by adverse possession has as good a title as someone who acquires it by a formal conveyance, so a common law spouse has the same rights as any other spouse. E.g., Adams v. Boan, 559 So. 2d 1084, 1087 (Ala. 1990); Lavery v. Hutchinson, 94 N.E. 6, 8-9 (Ill. 1911); Steves v. Smith, 107 S.W. 141, 143 (Tex. App. 1908). And so if Raymond and Barron were married, their marriage was not dissolved by "separation." Barron married three times between their separation and Raymond's death, and if they had a valid common law marriage, then all three marriages were bigamous and therefore invalid and she would be his unmarried widow. But death dissolves marriage, and Barron's current marriage was contracted after Raymond's death. She was therefore married when she applied for widow's benefits and, as we have seen, she did not fall into any of the exceptions to the ban on awarding benefits to remarried claimants. For this reason as well as because of the invalidity of the alleged common law marriage, she was properly denied benefits.

Affirmed.