[No. D040271. Fourth Dist., Div. One. Nov. 4, 2003.]

FLOR YOLANDA PERALTA ROSALES, Plaintiff and Appellant, v. GREG ALAN BATTLE et al., Defendants and Respondents.

**COUNSEL**

Singleton & Associates, Terry Singleton and Gerald Singleton for Plaintiff and Appellant.

Higgs, Fletcher & Mack, John Morris and Peter S. Doody for Defendants and Respondents.

OPINION

**O'ROURKE, J.**—After Jesus Mendoza was killed in an automobile accident in San Diego County, Mendoza's dependents, who live in Mexico, filed a wrongful death action against Greg Alan Battle, the driver of the vehicle that struck Mendoza, and Johnson & Johnson, Battle's employer (collectively respondents). The court granted respondents' motion for summary adjudication as to Flor Yolanda Peralta Rosales, the mother of four of Mendoza's children, ruling she does not have standing to sue under California's wrongful death statute.

Rosales appeals, contending (1) the court erred in determining she was not married to Mendoza under Mexican law; (2) her status as a heir under Mexican law gives her standing to sue for wrongful death in California; and (3) if she has no standing to sue for wrongful death, then California's wrongful death statute violates her constitutional right to equal protection. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Mendoza was killed in a car accident on February 14, 2001. Mendoza was a permanent resident of the United States, who had lived and worked in Vista during the week and had returned to his family in Tijuana, Mexico on weekends. Rosales is a Mexican citizen who lives in Tijuana.

In her deposition, Rosales testified she and Mendoza began living together on June 21, 1997. Mendoza gave her a wedding ring and moved her into the home he shared with his mother and siblings in Tijuana. Rosales considers June 21, 1997, the date of her marriage, even though she and Mendoza did not obtain a civil marriage license or go through a formal ceremony. Rosales and Mendoza had four children together, including twins born after Mendoza died.

On March 14, 2002, the Eighth Court of Civil Matters in Baja California, Mexico issued a judgment of intestate succession for Mendoza's estate. The judgment declares Rosales to be Mendoza's concubine ("concubina"), finding Mendoza and Rosales had maintained a relationship publicly comparable to a marriage for about four or five years and had always behaved as though they were married, even though they had not contracted legal matrimony. It found Mendoza, Rosales and their children had established a family relationship. Because Mendoza left no testamentary instrument, the judgment declares Rosales and her children Mendoza's "sole and universal heirs *ab intestato*."

On April 11, 2001, Mendoza's dependants filed a wrongful death action against respondents. On December 31, 2001, the first amended complaint, which added Rosales as a plaintiff, was filed by stipulation of the parties. On January 3, 2002, respondents moved for summary adjudication on the ground that

Rosales did not have standing to sue as a surviving spouse. After a hearing held on March 19, 2002, the court confirmed its tentative ruling that Rosales did not have standing to sue for wrongful death under California law. On April 18, 2002, Rosales moved for reconsideration and request for judicial notice of the Baja California court's judgment of intestate succession. On May 10, the court granted Rosales' motion for reconsideration and request for judicial notice but reaffirmed its ruling that Rosales has no standing.

## DISCUSSION

### I. *Summary Adjudication*

■ We review de novo a grant of summary adjudication. (*Ojavan Investors, Inc. v. California Coastal Com.* (1997) 54 Cal.App.4th 373, 385, [62 Cal.Rptr.2d 803].) "In independently reviewing a motion for summary adjudication of issues, we apply the same three-step analysis used by the superior court. 'First, we identify the issues framed by the pleadings . . . . [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. . . . [¶] When a . . . motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Ibid.*)

### II. *Wrongful Death Statute*

The cause of action for wrongful death is "a pure creature of the statute" and " 'exists only so far and in favor of such person as the legislative power may declare.' " (*Justus v. Atchison* (1977) 19 Cal.3d 564, 575 [139 Cal.Rptr. 97, 565 P.2d 122], disapproved on other grounds in *Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 171 [216 Cal.Rptr. 661, 703 P.2d 1].) "California first enacted a wrongful death statute in 1862. [Citation.] In 1872, the statute was codified as former section 377 of the Code of Civil Procedure. [Citation.] In 1992, the Legislature repealed former section 377 and enacted [section 377.60,] the current wrongful death statute." (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1439 [111 Cal.Rptr.2d 534].)

In relevant part, Code of Civil Procedure section 377.60[1] permits a cause of action for wrongful death to be asserted by: "(a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession." Rosales claims standing as a surviving spouse and as an heir.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise specified.

### III.   *Surviving Spouse*

■  California recognizes the validity of marriages contracted in another jurisdiction. (Fam. Code, § 308.) Therefore, in order to determine whether Rosales is a surviving spouse, we determine whether she contracted a valid marriage pursuant to the laws of the State of Baja California, Mexico. (*Estate of Bir* (1948) 83 Cal.App.2d 256, 257 [188 P.2d 499] [applying the laws of India]; 1 Kirkland et al., Cal. Family Law (2003) § 10.43[3], p. 10-65 (rel. 27-3/94).)

There are three types of unions between a man and woman in Mexico: civil marriages, unions performed by religious authorities, and concubinages. "Marriage must be performed before the officials established by the law and in conformance with the formalities established therein." (translated from Codigo Civil de Estrado de Baja California Sur (Baja California Sur Civil Code) art. 143.) Professor Jorge A. Vargas, Rosales's expert, declared that if a couple complies with required formalities, the marriage is a "civil contract" that "generates numerous rights and responsibilities for the spouses, their children, and their family." "When the formalities and legal requirements established by the law are not fully complied with, then the marriage may be declared null and void, or illegal, by a competent Mexican court." Hector Cervantes, respondents' expert, declared that Mexican marriages are established "only by presentation of a certified copy of the certificate or instrument drawn up in the Civil Authorities' authorized book."

A formal religious marriage ceremony carries no legal significance due to the official separation between church and state in Mexico.

Concubinage is an informal union that must be declared in a formal judgment by the civil court. It is based upon the following criteria: (1) a man and woman had children together or lived together during the five years prior to the demise of one of them; (2) neither of the parties were married; and (3) there was only one concubine. (Baja Cal. Sur, Civ. Code, art. 1522.) Under Mexican law, the concubine (the female partner) has the right (1) to inherit the deceased partner's property under the laws of intestate succession (Baja Cal. Sur Civ. Code, art. 1522); (2) to alimony if the partner left a valid will (Baja Cal. Sur Civ. Code, art. 1255, [¶¶] (V)); and (3) to collect decedent's life insurance, to receive funeral benefits, and to receive decedent's retirement fund. The concubine may not, however, use the last name of the male partner. Further, either party may terminate the concubinage without the other's consent.

Vargas contends concubinage is equivalent to a Mexican common law marriage because "the Civil law of Mexico legally recognizes its existence and expressly attributes 'legal effects' or derives 'legal consequences' from

this union for the benefit of both the surviving concubine and of the children procreated during said union; . . . in particular, the right of the concubine to be considered 'as the surviving spouse' . . . of the deceased party in a concubinage union." Vargas concludes his declaration in part as follow: "Informal legal marriages do exist in Mexico and they have been expressly recognized and incorporated as part of Mexico's Civil Law under the legal notions of 'Concubine' and 'Concubinage,' as reflected in each of the Civil Codes of the 31 States that form the Republic of Mexico, including Mexico's Federal Civil Code . . . ."

■ A common law marriage contracted in a state of the United States that recognizes common law marriages is just as valid as a ceremonial marriage. (*In re Estate of Schenck* (1997) 5 Neb. App. 736 [568 N.W.2d 567, 570] [Iowa law]; *Colbert v. Colbert* (1946) 28 Cal.2d 276, 280 [169 P.2d 633] [Texas law].) A common law marriage is not a "second-class sort of marriage" and a "common law spouse has the same rights as any other spouse." (*Barron v. Apfel* (7th Cir. 2000) 209 F.3d 984, 985–986 [Michigan law].) As another court stated: "There is no such thing as being a 'little bit' married . . . ." (*Adams v. Boan* (Ala. 1990) 559 So.2d 1084, 1087 [Alabama law].)

■ Rosales admits that a concubinage does not confer all the rights or duties as a legal marriage. For example, either party can end the concubinage without the consent of the other. In contrast, a common law marriage is terminated only by death or divorce. (*In re Marriage of Smyklo* (1986) 180 Cal.App.3d 1095, 1100 [226 Cal.Rptr. 174] [Alabama law].) As one court stated: "[O]nce married, one spouse's liason amoureuse does not end the marital status, whether that status was created by common law or by ceremony, though it may afford the other spouse a ground for judicially terminating the legal relationship." (*Adams v. Boan, supra,* 559 So.2d at p. 1087.) Further, the only court that has considered this question also found that although concubinage is a legal relationship in Mexico, it is not a legal marriage. (*Nevarez v. Bailon* (Tex.Civ.App. 1956) 287 S.W.2d 521.) ■ The trial court correctly found concubinage is not equivalent to a common law marriage because it does not confer on the parties all of the rights and duties of marriage.

## IV. *Heir*

■ Rosales also contends she has standing to sue because, as a concubine, she is Mendoza's heir under the Mexican law of intestate succession and has a right to sue for wrongful death in Mexican courts. We disagree because although Rosales is an heir under Mexico's law of intestate succession, she is not an heir under California's law of intestate succession. In

*Estate of Riccomi* (1921) 185 Cal. 458 [197 P. 97], an early case cited by Rosales, the Supreme Court explained the meaning of the word "heirs" as used to determine standing in wrongful death actions: The word "heir" "denotes . . . all 'those who are capable of inheriting from the deceased person' under *our* statutes of succession, or . . . 'the persons who would by the statute succeed to the real estate, [or in California estate of any kind] in case of intestacy.' " (*Id.* at p. 462, italics added.) That is, the word "heirs" refers to those individuals who may inherit by intestate succession under *California* law. Rosales would not inherit under California intestate law because she was not married to Mendoza. (Prob. Code, §§ 6401, 6402 .)

Rosales also attempts to avoid this conclusion by noting that Code of Civil Procedure section 377.10, subdivision (b) uses the term "beneficiary," which is defined in part as follows: "If the decedent died without leaving a will, the . . . person[s] . . . who succeed to a cause of action . . . under Sections 6401 and 6402 of the Probate Code or, *if the law of a sister state or foreign nation governs succession to the cause of action or particular item of property, under the law of the sister state or foreign nation.*" (Italics added.) However, Rosales fails to note that Code of Civil Procedure section 377.10 refers to a decedent's cause of action that accrued prior to the decedent's death; whereas, section 377.60 refers to a wrongful death action that accrues after the decedent's death. Accordingly, section 377.10 has no application to the present case.

The trial court ruled that Rosales lacked standing—even if she were an heir under California's law of intestate succession—because section 377.60, subdivision (a) grants heirs under intestate succession standing only "if there is no surviving issue of the decedent." (§ 377.60, subd. (a).) Rosales attempts to show the court erred by relying on the legislative history of the 1997 amendment to section 377.60,[2] which states: "[T]he Legislature's intent in enacting SB 1496 of 1992 was not to adversely affect the standing of any party having standing under prior law." (Sen. Rules Com. Special Consent Calendar on Sen. Bill No. 449 (1997–1998 Reg. Sess.) § 1, as amended Apr. 7, 1997.) Rosales' attempt fails because section 377.60 is not ambiguous and when "there is no ambiguity in the language of a statute, we presume the Legislature meant what it said, and the plain meaning of the statute governs." (*Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000 [90 Cal.Rptr.2d 236, 987 P.2d 705].) Under these circumstances, reliance upon legislative history is inappropriate. Rosales's attempt also fails because even under prior law an heir who was not a surviving spouse had standing only when the decedent

---

[2] The 1997 amendment applied the 1996 amendment, which restored the right of a parent to sue for the wrongful death of a child who left no issue, to causes of action arising on or after January 1, 1993. (Sen. Rules Com. Special Consent Calendar on Sen. Bill No. 449 (1997–1998 Reg. Sess.) § 1, as amended Apr. 7, 1997.)

left no issue. (See, e.g., *Coats v. K-Mart Corp.* (1989) 215 Cal.App.3d 961, 969 [264 Cal.Rptr. 12] [parent has no standing to sue for the wrongful death of a child who left issue].)

## V. *Equal Protection*

■ We reject Rosales's contention the wrongful death statute violates her constitutional right to equal protection because it grants domestic partners standing to sue for wrongful death. As a foreign citizen living outside the United States, Rosales is not entitled to constitutional protections: "[A]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with this country." (*United States v. Verdugo-Urquidez* (1990) 494 U.S. 259, 271 [108 L.Ed.2d 222, 110 S.Ct. 1056].) Further, the mere filing of a wrongful death action in California does not constitute substantial connections with this country.

## DISPOSITION

The judgment is affirmed. Each party is to bear its own costs on appeal.

Benke, J., and Haller, J., concurred.

A petition for a rehearing was denied December 3, 2003, and appellant's petition for review by the Supreme Court was denied March 24, 2004. Kennard, J., and Chin, J., did not participate therein.